BAILEY *v.* BAILEY.

1. EVIDENCE—JUDICIAL NOTICE—ECONOMIC DEVELOPMENTS.
   A court may take judicial notice of the lessened purchasing power
   of the dollar.

2. DIVORCE—ALIMONY—MODIFICATION OF DECREE—REMAND—EVIDENCE.
   Remarried husband's petition for modification of provision of
   divorce decree requiring him to pay $200 monthly alimony to
   childless first wife is remanded for the taking of additional
   proof to see if downward trend of husband's income has continued so as to justify modification because of substantially-reduced income, such proof to include copies of income-tax
   returns for 2 most recent years.

Appeal from Ingham; Coash (Louis E.), J. Submitted December 4, 1957. (Docket No. 103, Calendar No. 47,224.) Decided April 14, 1958.

Bill by Esther Tuttle Bailey against Thomas J. Bailey resulted in decree of divorce. Petition by defendant for modification of alimony provision dismissed. Defendant appeals. Remanded for additional testimony.

*Barnard Pierce,* for plaintiff.

*Glassen, Parr & Rhead (H. W. Glassen* and *Louis E. Wirbel,* of counsel), for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur, Evidence § 123.
[2] 17 Am Jur, Divorce and Separation § 728 *et seq.*

BLACK, J. The parties litigant were married November 25, 1936. The marriage was childless. November 17, 1953, they were divorced by decree of the present chancellor, Honorable Louis E. Coash, circuit judge of the Ingham circuit. The decree incorporates an agreement of the parties dealing with property and support matters and, of present interest, recites:

"It likewise appearing that in the property settlement agreement mentioned the parties contracted relating to payment of alimony for the maintenance and support of the plaintiff, the amount thereof appearing reasonable, now therefore, it is ordered, adjudged and decreed that the defendant shall pay to the plaintiff the sum of $200 monthly as permanent alimony for her maintenance and support, payments in said amount to be due and payable as of the first day of each succeeding month hereafter, provided that in the event plaintiff should remarry, the liability of the defendant for the payment of such alimony shall thereupon automatically terminate."

Mr. Bailey remarried (February 25, 1954) and moved to California where he now resides. He was a Michigan attorney and certified public accountant. Since removal to California he has pursued the practice of accounting only, not having been admitted to practice law in California. He is living at present with his second wife and her 3 children by a previous marriage. The second wife has a separate income, provided by a trust created for her benefit, of $300 per month.

Mr. Bailey, is aged 47. His first wife, appellee here, is aged 51. The latter was originally licensed to practice law in the State of Michigan and remained an active practitioner until 1941. She has an approximate income of $100 per month "from my investments" and with a sister owns "about a thousand acres of farm and orchard property about

25 miles from Lansing." The farm and orchard property produce no income. Thus the first wife's income is limited to that produced by investments, as noted, plus the amount received from Mr. Bailey in pursuance of the mentioned decree.

October 2, 1956, Mr. Bailey petitioned the court for modification of the provision—quoted from the decree above—for support of his first wife. The petition alleges a substantial reduction of income since entry of the decree; impairment of health affecting his capacity to remain steadily at income-producing work, and related matters amounting, if true, to a post-decree change of circumstances. The petition also alleges, and the first wife's answer concedes, that the quoted support provision is "subject to modification by the court upon proper showing of change of circumstances."

The petition came to due hearing on testimony given before the court by the first wife and testimony given by deposition of Mr. Bailey. The record fairly establishes that Mr. Bailey does have weak lungs and is subject to chronic respiratory ailments affecting to some extent his working capacity. It establishes also that he has suffered a fairly substantial decrease of income since moving west. His deposition, based on income tax returns, led the chancellor to conclude that Mr. Bailey's income in 1953, was some $9,500; that in 1954 his income was $13,000; that in 1955 his (earned) income was $5,577* and, as to 1956, that Mr. Bailey's income was $500 per month (to the date of deposition in October of 1956). To this we add that Mr. Bailey was without income in 1956 until June 1 of the year, at which time he entered

---

* During the year 1955 Mr. Bailey received, on account of dissolution of a partnership of which he theretofore was a member, his original investment therein amounting to $5,000. The amount so received was in addition to his earned income in 1955.

a new business in Los Angeles paying him $500 per month.

Further details, proven as to Mr. Bailey's financial condition, are of no decisive moment. They do establish the dismal difficulties one (not gifted otherwise financially) experiences when his income is reduced rather than increased in these years of progressive atrophy of the dollar. This last we judicially notice (*Normand* v. *Thomas Theatre Corporation*, 349 Mich 50).

The chancellor ruled:

"Now, we talk about a change in circumstances. I don't think the law contemplates that that kind of a change in circumstances should be taken into consideration in a case like this. He agreed to pay this, and, as you have stated, Mr. Glassen, he brought[*] this divorce. I think the reason he wanted his divorce, as I have heard—now, this is not in the record, and I believe you heard the same thing—was because he became interested in this woman who lived in California. That is only hearsay and I am not basing any opinion or decision upon that fact, except that he offered to pay her $200 per month for life.

"Now, his income last year, or up until October, taken at the very minimum, was $500 a month. That is $6,000 a year. If he pays Mrs. Bailey the $200 per month that was due her, he will still have $4,000 and some dollars possibly left to live upon. * * *

"So I do not find that there is any change in circumstances that would allow this court to reduce this amount of money. Now, it is true his income may be less, but he still has ample income with which to support himself and take care of this obligation. If he wants to take upon himself another wife, as he has, and needs money to support her, then he will have to work a little harder to get it. * * *

---

[*] The chancellor undoubtedly refers here to the instant petition for modification.

"If his income were down to $2,000 a year, or $2,400 a year, or $3,000 a year, and he had only $400 or $500 left to live on, then it might be a different proposition, but he still has ample funds. In 1956 there was $500 a month. In addition to that he was doing other work. What that income is I don't know.

"So, an order may enter denying his petition."

Mr. Bailey appeals.

The showing Mr. Bailey has made fairly suggests he may have petitioned righteously for some modification of the original requirement that he pay his first wife $200 per month for maintenance and support. His earned income during 1955, and that part of 1956 as disclosed, averages less than half the corresponding amount received in 1953, and the record of earning during 1956 suggests a downward trend with which we cannot adequately be familiar considering lapse of time between date of filing of deposition below (October 23, 1956) and date of submission here (December 4, 1957). Writing with no thought of criticism, and solely from the vantage point of hindsight, we suggest that it might have been better had the chancellor insisted, prior to final determination of the petition in early 1957, on evidentiary production of Mr. Bailey's income-tax return for the year 1956.

What to do on review of orders like this one continues to perplex a Court which is at a known disadvantage compared to the position of a trial chancellor. We noted our continued reliance on the latter, especially in domestic relations cases; in *Crooks* v. *Crooks,* 345 Mich 713 and again in *Van Haltern* v. *Van Haltern,* 351 Mich 286. Nevertheless we cannot leave everything to them; as witness Mr. Justice VOELKER in *Stone* v. *Stone,* 349 Mich 162. The reliable path, so far as concerns the case before us, is quite consistent with all 3 of these cases and their precepts. We recognize as in

*Crooks* and *Van Haltern* "the chancellor's comparatively better position of on-the-scene judgment," yet cannot affirm this order, the guidance of *Stone* in mind, absent further proof as now indicated. Our decision, then, is to remand for supplemental and definite proof of Mr. Bailey's earning record during the years 1956 and 1957, and for determination below of his petition on the complete record the chancellor will then have before him. If the trend of substantially-reduced income is shown as having continued through 1957, the chancellor doubtless will grant Mr. Bailey due relief. If on the other hand 1957 income is shown as having returned to an approximation of 1953's record, the petition probably will be denied in whole or in part by new order.

To save the known cost of another deposition, and solely by way of suggestion, we note that counsel should be able to stipulate Mr. Bailey's 1956 and 1957 income-tax returns into court by means of an attesting affidavit of Mr. Bailey, to which he will attach copies of such returns. Of course, and if either counsel desire further testimony of the parties, the chancellor probably will so order.

Remanded accordingly. Costs to abide final determination of the petition.

SMITH, EDWARDS, and KAVANAGH, JJ., concurred with BLACK, J.

KELLEY, J., concurred in the result.

DETHMERS, C. J., and CARR and VOELKER, JJ., took no part in the decision of this case.